**TOMOEGAWA (U.S.A.), INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Court Nos. 82–04–00558, 82–09–01351, 83–01–00082 and 83–03–00390.**

United States Court of
International Trade.

April 29, 1991.

Mandel and Grunfeld, Steven P. Florsheim, New York City, for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Barbara M. Epstein, Civ. Div., U.S. Dept. of Justice, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

RE, Chief Judge:

The Government has filed a motion to remove four actions that are pending on a suspension calendar, and simultaneously to amend its answers in these actions to assert a counterclaim.

On the basis that the Government's motion is untimely, plaintiff, Tomoegawa (U.S.A.), Inc., opposes the Government's motion to amend its answers to assert a counterclaim. Moreover, Tomoegawa cross-moves to remove the four actions from the suspension calendar and to dismiss them.

These motions raise questions that bear on the relationship of the Government's statutory right to assert a counterclaim under 28 U.S.C. § 1583 and the effect of the court's test case and suspension practice under USCIT R. 84. The specific questions presented are: (1) whether the Government's motion to amend its answers to include a counterclaim was timely filed; and (2) whether this court should grant the Government's motion in lieu of plaintiff's subsequently filed motion to dismiss the actions.

The court holds that the Government's motion to amend its answers to assert a counterclaim was timely filed. Accordingly, the Government's motion to remove the four actions from the suspension calendar and to amend its answers to include a counterclaim is granted. Tomoegawa's cross-motion to remove the actions from the suspension calendar and voluntarily dismiss the actions is denied.

## BACKGROUND

In June 1984, Tomoegawa moved under USCIT R. 84, to designate Court No. 82–06–00853 as a test case and suspend several actions, including those at bar, under the test case. Tomoegawa represented that the question presented in the test case and the suspended actions was identical and pertained to the classification, for customs duties purposes, of merchandise imported from Japan and described on the commercial invoices as toner, dry imaging ink, or developer. While the Government did not consent to Tomoegawa's motion, it noted no objection to the motion, and the motion was granted by the court.

The Customs Service classified the imported merchandise in the test case as chemical mixtures not specifically provided for under the Tariff Schedules of the United States (TSUS) under item 432.20 for entries in 1980, and under item 432.25 for entries in 1981. Tomoegawa protested the classification and contended that the merchandise was electrostatic inks properly classifiable as other inks under item 474.26 of the TSUS.

In January 1986, the Government moved in the test case to amend its answer to include certain counterclaims. While plaintiff did not consent to the Government's motion, its response stated that it did not object to the amendment of the Government's answer. The court then granted the Government's motion. In one of its counterclaims, the Government contended that the toner and developer were properly classifiable as "photographic chemicals"

under TSUS item 405.20 for the 1980 entries and item 408.41 for the 1981 entries. However, in 1986, the Government did not raise this claim or any other claim by way of a motion to amend its answer and the assertion of a counterclaim with respect to the four actions at bar.

In 1988, this court decided the test case and determined that the merchandise in issue was classifiable in accordance with the counterclaim asserted by the Government. *Tomoegawa, U.S.A., Inc. v. United States*, 12 CIT 112, 681 F.Supp. 867 (1988). The appellate court affirmed that decision holding that the imported merchandise was properly classifiable as photographic chemicals under the TSUS, as counterclaimed by the Government, with the exception of two non-benzenoid products. As to those two products, the appellate court remanded the action to this court for a determination of the correct classification. *Tomoegawa, U.S.A., Inc. v. United States*, 861 F.2d 1275 (1988). Subsequently, this court entered judgment as to those two products. *Tomoegawa, U.S.A., Inc. v. United States*, 15 CIT ——, slip op. 91–26, 1991 WL 56041 (Apr. 10, 1991).

In January 1989, the parties commenced discussions on the disposition of these actions. The Government proposed that the parties enter into a stipulation to effectuate a reliquidation of the similar merchandise in these actions under the photographic chemicals provision of the TSUS, in accordance with the decision in the test case.

Plaintiff countered indicating a preference for the original classification, which was rejected by this court and the appellate court, and suggested dismissal of the actions pursuant to USCIT R. 41(a)(1)(B). To that end, plaintiff represents that, on May 4, 1990, it served on the Government a proposed stipulation of dismissal in which plaintiff sought the Government's agreement to dismiss these four actions pursuant to USCIT R. 41(a)(1)(B). When the Government rejected plaintiff's proposed stipulation of dismissal, plaintiff sought to file with the Clerk's Office those stipulations of dismissal, unsigned by Government counsel. The Clerk's Office returned the stipulations to plaintiff since they were not in substantial conformity or compliance with the Rules of this court.

Subsequently, on June 6, 1990, eighteen months after the appellate court's decision, the Government filed a motion to remove these four actions from the suspension calendar, and simultaneously to amend its answer in each action to assert a counterclaim. The proffered counterclaim in each action mirrored the counterclaim in the test case which was sustained by this court and the Court of Appeals for the Federal Circuit. On June 12, 1990, plaintiff filed a motion to remove the four actions from the suspension calendar and voluntarily dismiss them pursuant to USCIT R. 41(a)(2).

## DISCUSSION

The authority of a party to assert a counterclaim in an action is found in 28 U.S.C. § 1583, which provides:

> In any civil action in the Court of International Trade, the court shall have exclusive jurisdiction to render judgment upon any counterclaim, cross-claim, or third-party action of any party, if (1) such claim or action involves the imported merchandise that is the subject matter of such civil action, or (2) such claim or action is to recover upon a bond or customs duties relating to such merchandise.

28 U.S.C. § 1583 (1988).

This statutory provision is implemented by Rule 13 of the Rules of the United States Court of International Trade which, in pertinent parts, provides:

> (a) Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if (1) the claim involves the imported merchandise that is the subject matter of the civil action, or (2) the claim is to recover upon a bond or customs duties relating to such merchandise.
>
> (b) Counterclaim Exceeding Opposing Claim.

\* \* \* \* \* \*

(c) Counterclaim Against the United States.

\*    \*    \*    \*    \*    \*

(d) Counterclaim Maturing or Acquired After Pleading.

\*    \*    \*    \*    \*    \*

(e) Omitted Counterclaim. When a pleader fails to set up a counterclaim through oversight, inadvertence or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment.

(f) Cross–Claim Against Co–Party.

\*    \*    \*    \*    \*    \*

(g) Joinder of Additional Parties.

\*    \*    \*    \*    \*    \*

(h) Separate Trials—Separate Judgments.

\*    \*    \*    \*    \*    \*

USCIT R. 13(a) and (e).

It is undisputed that the proffered counterclaims satisfy the requirements of Rule 13(a), namely that they involve the imported merchandise that is the subject matter of the civil action, and that they seek to recover customs duties relating to the subject merchandise. It also is undisputed that the proposed counterclaims are compulsory and cannot be independently asserted in later actions since they "arise[ ] out of the transaction or occurrence that is the subject matter of plaintiff's claim." *M & M/Mars Snackmaster v. United States*, 5 CIT 43, 44, 1983 WL 4991 (1983).

Nonetheless, plaintiff contends that the Government's motion to amend its answers to include a counterclaim in each of these actions should be denied because it was not timely filed. Specifically, plaintiff objects to the Government's assertion of the counterclaims because they were interposed six to seven years after the filing of the answer in each action, and more than four years after the Government became aware of the existence of the facts necessary to assert its counterclaims. Furthermore, plaintiff states that the Government's assertion of a counterclaim more than one and one half years after the decisions by this court and the Federal Circuit in the

test case constitutes inexcusable excessive delay.

The Government contends that since the correct classification of the imported merchandise was upheld in the test case under the provision asserted in its counterclaim, "justice clearly requires that the merchandise be classified under the correct provision."

While the Government did not cite a specific provision of Rule 13, a careful reading of the motion papers reveals that Rule 13(e) serves as the basis of its motion to amend its pleadings to include certain counterclaims. By its terms, Rule 13(e) requires that a counterclaim not filed in conjunction with an answer be pleaded by way of amendment. In turn, that requires that Rule 13(e) operate in conjunction with Rule 15(a), the rule generally governing the amendment of pleadings.

USCIT R. 15(a) specifically provides:

(a) Amendments. A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been noticed for trial, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be longer, unless the court otherwise orders.

USCIT R. 15(a).

■ Since the Rules of the Court of International Trade mirror the Federal Rules of Civil Procedure, it is without question that this court may look to the decisions and commentary on the Federal Rules in the interpretation of its own rules. *See* USCIT R. 1; *Zenith Radio Corp. v. United States*, 823 F.2d 518, 521 (1987).

■ It is evident that the provisions of Rule 15(a) pertaining to the amendment to pleadings as a matter of right do not apply to these actions since the Government's answers in these actions were filed in 1983 and 1984. Neither has the Government obtained written consent from the plaintiff. Therefore, the Government may amend its answers only with the permission of the court. In these circumstances, caselaw and the commentators teach that the specific standards of Fed.R.Civ.P. 13(f), the identical provision to USCIT R. 13(e), govern and not the general language of Rule 15(a) in determining whether the court will exercise its discretion and permit the Government to amend its answer to add its counterclaim. 6 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1430, at 226 (1990). *See A.J. Indus., Inc. v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 503 F.2d 384, 388 (9th Cir.1974) (interpretation of comparable provisions in Fed.R.Civ.P. 13(f) and 15(a)).

■ Rule 13(e) provides that a party may plead an omitted counterclaim based upon "oversight, inadvertence or excusable neglect, or when justice requires." Again, the Government does not predicate its motion to amend on any of the specific grounds enumerated in the rule. However, it is apparent that oversight, inadvertence or excusable neglect are inapplicable in these circumstances. Hence, the court must determine whether independent grounds exist under the "when justice requires" standard to allow the pleading of an omitted counterclaim. *See Smith Contracting Corp. v. Trojan Constr. Co.*, 192 F.2d 234 (10th Cir.1951).

The "when justice requires" standard provides the court with great flexibility in exercising its discretion to permit an amendment to pleadings. Wright, Miller & Kane, *supra*, at 219. Furthermore, the courts have interpreted this provision liberally. *See Silvers v. TTC Indus., Inc.*, 484 F.2d 194, 198 (6th Cir.1973).

■ The granting of a motion for leave to amend pleadings is addressed to the sound discretion of the court. *Budd Co. v. Travelers Indem. Co.*, 109 F.R.D.

561, 563 (E.D.Mich.1986) (*quoting Kaplan v. United States*, 42 F.R.D. 5, 7 (C.D.Cal. 1967)), *aff'd*, 820 F.2d 787, 791–92 (6th Cir. 1987). In the exercise of its discretion, the court will examine the facts and circumstances of each case. *Budd*, 109 F.R.D. at 563. Moreover, it will consider a variety of factors including, but not limited to, (1) the timeliness of the motion to amend the pleadings; (2) the potential prejudice to the opposing party; (3) whether additional discovery will be necessary; (4) the procedural posture of the litigation; (5) whether the omitted counterclaim is compulsory; (6) the impact on the court's docket and (7) the public interest. *See Budd*, 820 F.2d at 792.

Whether the Government's motion to amend is timely depends upon when the Government acquired knowledge of the facts and circumstances that form the basis of the counterclaims. It is the view of the court that, once the Government gained that knowledge, it had a duty to assert its counterclaims in a timely fashion.

Plaintiff contends that the Government first had knowledge of the facts necessary to support the counterclaims in these actions in January 1986, when the Government asserted its counterclaim in the test case. Plaintiff further maintains that the Government's inaction constitutes an excessive delay, and provides sufficient grounds to deny the motion to amend.

The Government asserts that it was not under a duty to proffer its counterclaims in January 1986 in these actions. It states that it had no obligation to conduct discovery to determine the facts because, pursuant to USCIT R. 84, these actions were suspended under the test case since 1984.

USCIT R. 84(f) provides that "[a]n order suspending an action shall stay all further proceedings and filing of papers in the suspended action unless the court otherwise directs." As explained in *Marubeni Am. Corp. v. United States*, 77 Cust.Ct. 186, C.R.D. 76–14 (1976):

The concept of "suspending" cases under a "test case" is a constructive tool which is unique to ... [this] Court. Since many cases commonly appear on the court's

dockets involving the same issue of law or fact, it is readily apparent that there must be available some procedural vehicle whereby litigants may be permitted to appropriately delay further proceedings until the final disposition of the test case. *Marubeni,* 77 Cust.Ct. at 188. Moreover, "[t]he purpose of the suspension procedure in this court is to facilitate the disposition of actions, eliminating the necessity of trying the same issue over and over again, and dispensing with the filing of complaints and answers in actions which in all likelihood will never be tried." *H.H. Elder & Co. v. United States,* 69 Cust.Ct. 344, 345, C.R.D. 72–28 (1972). Accordingly, the Government contends that to have conducted discovery and filed amended pleadings in 1986 would have contravened the purposes of suspension. Therefore, it was not dilatory in failing to move to amend its answers to include counterclaims until June 1990.

Alternatively, plaintiff claims that the Government acquired knowledge, and therefore had a duty to assert its counterclaims as of December 1988, the time of the appellate court's affirmance of this court's decision in the test case. Plaintiff submits that the lapse of 18 months between the Federal Circuit's decision and the filing of the motion to amend constitutes unreasonable delay on the part of the Government.

The Government responds that there was no inexcusable delay or bad faith on its part. The Government maintains that plaintiff is not prejudiced by the motion to amend. Moreover, plaintiff cannot claim surprise in the assertion of the counterclaims, particularly in view of the communications, both verbal and written, between the parties as to the disposition of these actions after the decision by the Federal Circuit.

■ Mere delay without a showing of prejudice by the opposing party is not sufficient to deny a motion to amend pleadings. *Simmonds Precision Prods., Inc. v. United States,* 212 Ct.Cl. 305, 546 F.2d 886, 892 (1976); *Applied Data Processing, Inc. v. Burroughs Corp.,* 58 F.R.D. 149, 150 (D.Conn.1973) (citations omitted). The cases cited by plaintiff are not controlling as delay was not the sole reason for denying the amendment. *See, e.g., Barnes Group, Inc. v. C & C Prods., Inc.,* 716 F.2d 1023, 1035 n. 35 (4th Cir.1983) (proposed amendment was denied on variety of factors not merely delay); *Rohner, Gehrig & Co. v. Capital City Bank,* 655 F.2d 571, 576 (5th Cir.1981) (proposed amendment would prejudice opposing party); *Imperial Enters., Inc. v. Fireman's Fund Ins. Co.,* 535 F.2d 287, 293 (5th Cir.1976) (court previously rejected merits of proposed counterclaim); *Church of Scientology v. Siegelman,* 94 F.R.D. 735, 740 (S.D.N.Y.1982) (proposed amendment lacked merit); *Kaplan,* 42 F.R.D. at 8 (proposed counterclaim was not meritorious); and *Avon Publishing Co. v. American News Co.,* 137 F.Supp. 896, 897 (S.D.N.Y.1955) (defendant exhibited a lack of good faith in interposing proposed counterclaim).

■ In essence, the court must determine whether the Government, in January 1986, had an obligation to conduct discovery in these four actions or any other action on the suspension calendar, and thus, proffer counterclaims identical to the one asserted in the test case. This question must be considered in light of the nature and purpose of suspension, and the fact that these actions were already suspended for a period of two years. In these cases, the court concludes that the Government's duty to assert its counterclaims did not arise in January 1986.

On the other hand, the Government's duty did arise after the Federal Circuit's affirmance of this court's decision in the test case. Plaintiff is correct that a number of months have elapsed between the appellate court's decision and the filing of the Government's motion to amend. Yet, the Government appears to have exercised reasonable diligence in determining the basis of the counterclaims. This is evidenced by the Government's proposal in January 1989 to stipulate to the classification of the merchandise in issue as photographic chemicals in accordance with the decision in the test case. Hence, the Government's posi-

tion on the merits was not a surprise to plaintiff, nor did the Government allege any new facts. On the facts presented, it would not be an abuse of the court's discretion to grant the Government's motion to amend to include a counterclaim. *See Maschmeijer v. Ingram,* 97 F.Supp. 639, 643 (S.D.N.Y.1951).

■ As to the question of prejudice, plaintiff alleges that the Government's inaction has prevented it from obtaining and preserving essential evidence necessary to defend against the Government's counterclaims. Plaintiff suggests that information relevant to the manufacturing process of the subject merchandise may no longer be available from the foreign manufacturer. Plaintiff also argues that the Government's delay eliminated certain procedural options that may have been available to plaintiff to avoid the possibility of defending against a claim for additional duty.

Plaintiff's unsubstantiated allegations do not provide a sufficient demonstration of prejudice. Plaintiff has failed to offer affidavits or other documentation to support its claim that evidence as to the relevant manufacturing process is no longer available. Plaintiff does not detail the procedural options that it has lost, and why those options are no longer available in view of the Government's alleged delay. For these reasons, the court finds that plaintiff was not prejudiced by the Government's failure to file its motion to amend to include certain counterclaims until June 1990.

The question of further discovery is subsumed in the court's discussion of potential prejudice to the plaintiff. Without additional substantiation, the court will not conjecture about the time, burden and expense of any discovery that may be necessary to resolve these actions.

Turning to the procedural posture of the litigation, the court previously has discussed the beneficial purposes and implications of the suspension practice under USCIT R. 84. Nonetheless, the court must take into consideration plaintiff's motion to dismiss pursuant to USCIT R. 41(a)(2). The rule provides, in pertinent part, that:

[A]n action shall not be dismissed by the plaintiff unless upon order of the court, and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. . . .

USCIT R. 41(a)(2).

In support of Tomoegawa's motions to remove these actions from the suspension calendar and to dismiss them, Tomoegawa asserts, without citing any authority, that classifying the merchandise properly would "require a monumental effort in expense and time, [and] the end product will not justify the means." The Government, in its reply to Tomoegawa's motion, contends that "allowing the merchandise to remain classified under erroneous provisions [in the TSUS] . . . [because] it would be too burdensome to do the paperwork . . . is not sufficient justification to insist the merchandise remain incorrectly classified."

■ Plaintiff's right unilaterally to dismiss these actions ended when the Government filed its answers. Once that occurred, dismissal was possible only with the consent of both plaintiff and the Government pursuant to USCIT R. 41(a)(1)(B), or, in the absence of an agreement, upon an order of the court. The Government refused to stipulate to a dismissal, hence, the court is presented with plaintiff's motion to dismiss under Rule 41(a)(2).

Since there are no judicial precedents of this court, once again the court will look for guidance to the cases interpreting the parallel rule to USCIT R. 41(a)(2) in the Federal Rules of Civil Procedure. *See* US-CIT R. 1; *Zenith Radio, supra.*

Dismissal on motion pursuant to Rule 41(a)(2) lies within the sound discretion of the court. 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2364, at 161 and cases cited in n. 58 (1971 & Supp.1991). The primary purpose of the rule is "to

prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions." *Alamance Indus., Inc. v. Filene's,* 291 F.2d 142, 146 (1st Cir.1961). It also is intended "to protect the defendant from prejudice by plaintiff-instigated dismissals." *Vincent v. A.C. & S., Inc.,* 833 F.2d 553, 556 (5th Cir.1987). Clear legal prejudice to the defendant is the foremost factor for the court in exercising its discretion over a Rule 41(a)(2) motion to dismiss. *See Conafay v. Wyeth Laboratories,* 841 F.2d 417, 419 (D.C.Cir.1988); *Harvey Aluminum, Inc. v. American Cyanamid Co.,* 15 F.R.D. 14, 18 (S.D.N.Y.), *aff'd,* 203 F.2d 105 (2d Cir.1953).

■ Based on the facts and circumstances in these actions, the court concludes that, at this point in the litigation process, the Government's motion to amend its pleadings to include counterclaims in the cases in question should be permitted. To grant plaintiff's motion to dismiss would severely prejudice the Government because the Government would be unable to recover the additional duties due in an independent action. Moreover, in this case, the court is unable to impose any terms and conditions, or fashion an *ad hoc* solution that would prevent undue prejudice to the Government. *See, e.g., Eastalco Aluminum Co. v. United States,* 14 CIT ——, ——, 750 F.Supp. 1135, 1143–44 (1990), *reh'g denied,* 15 CIT ——, 757 F.Supp. 1422 (1991).

Permitting the Government to amend its answers to include counterclaims will have no adverse impact on the court's docket. Only four actions are involved, and the amendment to the Government's pleadings will not impose an undue burden on the judicial resources of the court.

Lastly, the court must consider the public interest. Here, the court will examine the intent and purpose of 28 U.S.C. § 1583, the statutory basis for the assertion of the Government's counterclaims. The legislative history of the Customs Courts Act of 1980, Pub.L. No. 96–417, makes clear that Congress intended the provision to autho-

rize the court to enter judgment on a counterclaim so as to enable the Government to recover "the proper amount of import duties." H.R.Rep. No. 1235, 96th Cong., 2d Sess. 37 (1980), *reprinted in* 1980 U.S. Code Cong. & Admin. News 3729, 3748. *See also, id.* at 49; *Eastalco,* 14 CIT at ——, 750 F.Supp. at 1139–40. Additionally, the court must be mindful of the teaching of *Jarvis Clark v. United States,* 733 F.2d 873, *reh'g denied,* 739 F.2d 628 (1984). There, the Federal Circuit noted that, in determining the classification of imported merchandise, "the court's duty is to find the *correct* result, by whatever procedure is best suited to the case at hand." *Jarvis Clark,* 733 F.2d at 878 (italics in original). To grant the Government's motion to amend, to include certain counterclaims, ensures that the court will be able to determine the correct duty for the merchandise in issue. Accordingly, the public interest weighs in the Government's favor.

### CONCLUSION

It is the conclusion of the court that the Government's motion to amend was timely filed. Hence, justice requires granting the Government's motion and permitting it to assert a counterclaim in each of these actions. Plaintiff's cross-motion to dismiss the cases is denied.

Accordingly, it is hereby

ORDERED that the Government's motion to remove these actions from Suspension Calendar 82–06–00853 and to amend its pleadings in these actions to include a counterclaim is granted, and it is further

ORDERED that plaintiff's cross-motion to remove these actions from that Suspension Calendar and to dismiss them is denied.